# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **LEONARD D. MORGAN, et al.,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:21-cv-00100-P** |
| | § | |
| **CHUBB LLOYDS INSURANCE** | § | |
| **COMPANY OF TEXAS,** | § | |
| **Defendant.** | § | |

## OPINION AND ORDER REMANDING CASE TO STATE COURT

In this first-party-insurance case, the Court must first decide a Texas statute's effect on its subject-matter jurisdiction. *See* TEX. INS. CODE § 542A.006. The statute allows an insurer to "elect to accept whatever liability an agent might have to the claimant for the agent's acts or omissions," and if the election is made after a claimant files suit, the "court shall dismiss the action against the agent with prejudice." *Id.* In this case, Plaintiffs sued their insurer, Chubb (who is diverse), and agent, Smith (who is non-diverse), in state court. Chubb then elected to accept whatever liability Smith might have, and the state court dismissed Smith. Chubb then removed the case under diversity jurisdiction.

Now before the Court is Plaintiffs' motion to remand, which forces the Court to answer this question: in determining diversity jurisdiction, does the Court consider Smith's citizenship? The Fifth Circuit has not ruled on this question and the district courts are deeply divided. *See Ramirez v. Allstate Vehicle & Prop. Ins. Co.*, 490 F. Supp. 3d 1092 (S.D. Tex. 2020) (citing cases). Having now considered the parties' arguments and

applicable law, the Court concludes that it must consider Smith's citizenship. Accordingly, this Court lacks jurisdiction and will **REMAND**.

## BACKGROUND

This is a simple state-law coverage dispute. Plaintiffs allege that a storm damaged their property during their Chubb insurance policy's term. Pls.' Amend. Pet. at 4, ECF No. 1-4. Plaintiffs submitted the damage to Chubb, and Chubb assigned Sean Smith to investigate the claim. *Id.* According to Plaintiffs, Chubb and Smith "performed an outcome-oriented investigation" and improperly denied Plaintiffs' claim. Pls.' Amend. Pet. at 4–6.

On September 28, 2020, Plaintiffs filed this case in Texas state courts, naming both Chubb and Smith as defendants. Pls.' Orig. Pet. at 1, ECF No. 1-3. On November 11, Chubb invoked the newly enacted Texas Insurance Code § 542.006(c) and elected to accept Smith's liability. Def.'s Notice of Removal at 1, ECF 1. On December 17, Chubb moved to dismiss Smith and sever defendants, which on January 13, 2021, the state court granted.

Now with the only remaining defendant being Chubb, a New Jersey, New York, and Pennsylvania citizen, Chubb filed its notice of removal based on diversity jurisdiction. ECF No. 1. Plaintiffs timely filed a motion to remand, arguing that they properly joined Smith and his dismissal was involuntary, requiring remand. Pls.' Mot. to Remand at 3, ECF No. 12. Chubb responded that Smith was improperly joined because, once Chubb elected to accept Smith's liability, Plaintiffs have no possibility of recovery against Smith. Def.'s Resp. at 3–4, ECF No. 13. Plaintiffs' motion to remand is now ripe.

2

## LEGAL STANDARD

Motions to remand are governed by 28 U.S.C. § 1447(c), which provides that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). When considering a motion to remand, "[t]he removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). When the party relies on improper joinder, the burden of persuasion is a "**heavy one**." *Kling Realty Co., Inc. v. Chevron USA, Inc.*, 575 F.3d 510, 514 (5th Cir. 2009) (emphasis added). Additionally, the Court must "resolve any contested issues of material fact, and any ambiguity or uncertainty in the controlling state law" in Plaintiffs' favor. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999).

## DISCUSSION OF APPLICABLE LAW

To determine whether Smith's citizenship should be considered for jurisdictional purposes, the Court must resolve two conflicting rules within removal jurisdiction. *First*, Plaintiffs raise the voluntary-involuntary rule, which states that "an action nonremovable when commenced may become removable thereafter only by the voluntary act of the plaintiff." *Hoyt v. Lane Const. Corp.*, 927 F.3d 287, 295 (5th Cir. 2019). *Second*, Defendants cite the improper-joinder rule, which allows defendants to remove actions when the plaintiff cannot "establish a cause of action against the non-diverse party in state court." *Id.* Although there have now been dozens of district court cases analyzing this conflict, no clear consensus has emerged regarding the rules' interaction. *See Ramirez*,

490 F. Supp. 3d at 1102–03.  In an effort to properly apply these rules, the Court sets out the rules' pedigrees and rationales.

After conducting this inquiry below, the Court concludes that the two rules protect different interests that sit in tension: the voluntary-involuntary rule protects a plaintiff's right to choose its forum; the improper-joinder rule protects a defendant's right to a federal forum. Each rule must have some application, and neither can destroy the other.

## A.   Principles of federalism and separation of powers limit federal jurisdiction to the statutory text.

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (Roberts, C.J.) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *cf. Bank of U.S. v. Deveaux*, 9 U.S. 61, 87 (1809) (Marshall, C.J.) ("The duties of this court, to exercise jurisdiction where it is conferred, and not to usurp it where it is not conferred, are of equal obligation."), *overruled in part by Louisville, C. & C.R. Co. v. Letson*, 43 U.S. 497 (1844).  Federal courts must "scrupulously confine" their jurisdiction to the statutory text that gives jurisdiction:

> The policy of the [diversity] statute calls for its strict construction.  The power reserved to the states, under the Constitution (Amendment 10), to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution (article 3).  Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.

*Healy v. Ratta*, 292 U.S. 263, 270 (1934); *cf. City of Indianapolis v. Chase Nat. Bank of City of New York*, 314 U.S. 63, 76 (1941) ("The dominant note in the successive enactments

of Congress relating to diversity jurisdiction is one of jealous restriction, of avoiding offense to state sensitiveness, and of relieving the federal courts of the overwhelming burden of 'business that intrinsically belongs to the state courts' in order to keep them free for their distinctive federal business.").  These concerns require this Court to "presume that a suit lies outside [its] limited jurisdiction." *Howery v. Allstate ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).[1]

## B.    Section 1441 permits defendants to remove cases with complete diversity.

Chubb argues that the Court has removal jurisdiction. *See* 28 U.S.C. § 1441. This statute creates jurisdiction over cases filed in state court that could have originally been filed in federal court.  The statute states:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

*Id.* § 1441(a). Due to the presumption against federal jurisdiction, the removal statute is to be "strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand."  *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007) (cleaned up).  "This is so because 'removal jurisdiction raises significant federalism concerns.'" *Duncan v. Safeco Ins. Co.*, No. 7:20-CV-119-M-BP, 2020 WL 6811485, at *1

---

[1] *Cf.* THE FEDERALIST NO. 17 (Alexander Hamilton) (writing as "Publius") (stating that "the ordinary administration of criminal and civil justice" would be left to the states); *and* Letter from Thomas Jefferson to James Madison (Mar. 15, 1789), in THE LIFE AND SELECTED WRITINGS OF THOMAS JEFFERSON 426 (Adrienne Koch & William Peden, eds., 2004 Modern Library Paperback ed.) (1944) (The federal "judiciary . . . is a body, which, if rendered independent and kept strictly to their own department, merits great confidence for their learning and integrity.")

(N.D. Tex. Oct. 30, 2020) (Ray, M.J.) (quoting *Willy v. Coastal Corp.*, 885 F.2d 1160, 1164 (5th Cir. 1988)).

In this case, Chubb relies on the original-jurisdiction ground of diversity jurisdiction. *See* 28 U.S.C. § 1332(a). Diversity jurisdiction grants district courts original jurisdiction over civil actions where the amount in controversy exceeds $75,000 and the parties have completely diverse citizenship, meaning "that all persons on one side of the controversy be citizens of different states than all persons on the other side." *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004) (citation omitted).

## C.     Under Section 1446(b), a case not originally removable can become removable, but only through the plaintiff's voluntary act.

If a case develops diversity jurisdiction after the initial pleading, then it can also be removed. *Hoyt*, 927 F.3d at 295. Section 1446(b)(3) governs this situation. Subject to exceptions not applicable here:

> [I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3). Although not in the statutory text, it is well established that "*only* the voluntary dismissal or nonsuit by the plaintiff of a party or of parties defendant can convert a nonremovable case into a removable one." *Hoyt*, 927 F.3d at 295 (cleaned up) (emphasis in original).

The Supreme Court originally created this removal ground. *Weems v. Louis Dreyfus Corp.*, 380 F.2d 545, 547 (5th Cir. 1967). In 1898, the Supreme Court approved a

defendant removing a case after the plaintiff dismissed the only non-diverse defendant. *See Powers v. Chesapeake & O. Ry.*, 169 U.S. 92 (1898). The Court acknowledged that diversity did not exist when the plaintiff filed in state court, but it held that jurisdiction arises "as the action assumes the shape of a removable case in the court in which it was brought." *Id.* at 101.

A few years later, the Supreme Court clarified that only the plaintiff's voluntary act can create federal jurisdiction. *Whitcomb v. Smithson*, 175 U.S. 635 (1900). By 1918, the Supreme Court was able to say that it was

> settled that a case . . . cannot be converted into a removable one by evidence of the defendant or by an order of the court upon any issue tried upon the merits, but that such conversion can only be accomplished by the voluntary amendment of his pleadings by the plaintiff or, ***where the case is not removable because of joinder of defendants, by the voluntary dismissal or nonsuit by him of a party or of parties defendant***.

*Great N. Ry. Co. v. Alexander*, 246 U.S. 276, 280 (1918) (emphasis added). By the 1940s, the rule was well known:

> [I]f the resident defendant was dismissed from the case by the voluntary act of the plaintiff, the case became removable, but if the dismissal was the result of either the defendant's or the court's acting against the wish of the plaintiff, the case could not be removed.

*Weems*, 380 F.2d at 546.

This rule reflects the well-cited policy of making the plaintiff the master of the complaint. JAMES WM. MOORE, 16 MOORE'S FED. PRAC. § 107.140[3][a][C] (3rd ed. 2020). The Supreme Court relied on this policy. *See e.g.*, *Alexander*, 246 U.S. at 282 ("The obvious principle of these decisions is that . . . the plaintiff may by the allegations of his complaint determine the status with respect to removability of a case . . . when it is

commenced, and that this power to determine the removability of his case continues with the plaintiff throughout the litigation . . . .").  This makes the voluntary-involuntary rule the diversity-jurisdiction corollary to the well-pleaded complaint rule. 16 MOORE'S FED. PRAC. § 107.140[3][a][C].  Since this rationale underlies the rule, this Court must adhere to it.  BRYAN A. GARNER ET AL., THE LAW OF JUDICIAL PRECEDENT, 27 (2016) ("The rule is that courts must adhere not just to the result but also to any reasoning necessary to that result.").

Even though the Supreme Court held that the voluntary-involuntary rule arises from the plaintiff's control over the case, later courts justified the voluntary-involuntary rule because it prevents removal of state-court actions on grounds that may get reversed.  *See Hoyt*, 927 F.3d at 297 ("When a state court order creates diversity jurisdiction and that order cannot be reversed on appeal, our precedent treats the voluntary-involuntary rule as inapplicable.") (citing *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006)).  But the "equation of finality with removability does not comport with several early Supreme Court decisions in which removal was denied even though the state court actions that arguably made the cases removable had been affirmed by or had originated in the state's highest court." 16 MOORE'S FED. PRAC. § 107.140[3][a][C] (citing *e.g. Alexander*, 246 U.S. 276 (order denying non-resident defendant's application for removal originated in Montana Supreme Court)).  As a district court put it, "[w]hat emerges from an examination of the Supreme Court cases on the voluntary-involuntary rule is the conclusion that the rule is not based upon an appealability/finality rationale but upon a policy favoring

the plaintiff's 'power to determine the removability of his case.'" *Jenkins v. Nat'l Union Fire Ins. Co.*, 650 F. Supp. 609, 613–14 (N.D. Ga 1986).

In 1949, Congress codified the voluntary-involuntary rule. *Weems*, 380 F.2d at 547. The original statute, and all subsequent versions, do not explicitly include the voluntary-involuntary rule, but after analyzing this issue, the Fifth Circuit came to the "firm conviction" that the "voluntary-involuntary rule was not affected by the amendment, and therefore remains part of today's applicable law." *Id.* at 548. This statutory interpretation remains the law today. *See* GARNER ET AL., THE LAW OF JUDICIAL PRECEDENT, 333 ("Stare decisis applies with special force to questions of statutory construction."); *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 274 (2014) (Roberts, C.J.) ("The principle of *stare decisis* has special force in respect to statutory interpretation because Congress remains free to alter what we have done.") (quoting *John R. Sand & Gravel Co. v. U.S.*, 552 U.S. 130, 139 (2008). Since then, this interpretation has been routinely followed and relied upon by district courts. *See e.g.*, *Mumfrey v. Anco Insulations, Inc.*, CV No. 11-2284, 2011 WL 4745626 (E.D. La. 2011) (remanding case based on voluntary-involuntary rule); *Jenkins*, 650 F. Supp. at 611 (remanding and noting that "Section 1446(b) has been interpreted to preserve the voluntary-involuntary rule").

## D.   The judge-made improper-joinder rule precludes a plaintiff from improperly joining a non-diverse defendant to defeat diversity.

A separate rule relating to removal jurisdiction is the improper-joinder rule. Under this rule, a defendant can claim that a plaintiff improperly added a non-diverse defendant to defeat diversity jurisdiction. *See Pullman Co. v. Jenkins*, 305 U.S. 534, 541 (1939) ("It

9

is always open to the non-resident defendant to show that the resident defendant has not been joined in good faith and for that reason should not be considered in determining the right to remove."). "The doctrine of improper joinder rests on . . . statutory underpinnings, which entitle a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'" *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (citing 28 U.S.C. §§ 1359, 1441(b)). If a court concludes the non-diverse party's joinder was improper, then the court disregards that party's citizenship. In effect, the resident defendant is held to have never properly been before the court. *See* 16 MOORE'S FED. PRAC. § 107.140[3][a][C]. Consequently, the case would be removable.

A non-diverse defendant is improperly joined if "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Ramirez*, 490 F. Supp. 3d at 1105. To aid in determining this, the Fifth Circuit has articulated three tests: (1) actual fraud in the pleading of jurisdictional facts, (2) the inability of the plaintiff to establish a cause of action against the non-diverse party in state court, or (3) if a state court has come to judgment, the federal court must ask whether there is any reasonable possibility that the judgment will be reversed on appeal. *Smallwood*, 385 F.3d at 573 (tests 1 and 2); *Hoyt*, 927 F.3d at 296 (test 3). Although the rule's purpose is to ferret out non-diverse defendants joined solely to defeat diversity, the plaintiff's subjective motive is irrelevant. *Smallwood*, 385 F.3d at 574. Each test objectively probes the plaintiff's ability to recover against the non-diverse defendant: "If no reasonable basis of recovery exists, a conclusion can be drawn that the plaintiff's decision to join the local

10

defendant was indeed fraudulent . . . ," and therefore improper. *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005).

The Fifth Circuit affirmed this broad application of the improper-joinder rule in *Hoyt*, 927 F.3d 287.  In *Hoyt*, the state court entered summary judgment in favor of the non-diverse defendant.  The *Hoyt* majority concluded the summary judgment dismissed the non-diverse defendant from the case and that the plaintiff had abandoned any appeal.[2] *Id.* at 297.  Thus, according to the *Hoyt* majority, recovery against the non-diverse defendant was impossible, and the district court's order assuming diversity jurisdiction was affirmed.  *Id.*  From this case, some district courts have induced a bright-line rule: a non-diverse defendant is improperly joined when "the [diverse] defendant has demonstrated

---

[2]With due respect to the learned and distinguished Fifth Circuit panel, the undersigned must disagree with this conclusion.  The Texas trial court's summary-judgment order did not remove the non-diverse defendant from the case, and it was not a final, appealable order under Texas law. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001) ("[W]hen there has not been a conventional trial on the merits, an order of judgment is not final for purposes of appeal unless it . . . unequivocally states that it finally disposes of all claims and parties.").

Rather, as a former Texas judge on both the trial and appellate bench, the undersigned agrees with the portion of Judge Haynes's dissent in *Hoyt*, where she notes that Texas procedure prevented the non-diverse defendant from appealing the order at that point, leaving the non-diverse party in the case.  *Hoyt*, 927 F.3d at 300–301 (Haynes, J., dissenting); *see also e.g.*, *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 510 (Tex. 1995) ("All parties and all issues before the trial court must be disposed of before a summary judgment becomes final and appealable."); *Callaway v. Martin*, No. 02-16-00181-CV, 2017 WL 2290160, at *3 n.3 (Tex. App.—Fort Worth May 25, 2017, no pet.) (Sudderth, J.) ("A trial court has plenary power—power that is full, entire, complete, absolute, perfect, and unqualified—over, and therefore the jurisdiction and authority to reconsider, not only its judgment but also its interlocutory orders until thirty days after the date a final judgment is signed or, if a motion for new trial or its equivalent is filed, until thirty days after the motion is overruled by signed, written order or operation of law, whichever first occurs.").  Thus, as Judge Haynes states, the Fifth Circuit lacked jurisdiction over the *Hoyt* appeal, and the non-diverse party was not improperly joined.

that there is no possibility of recovery by the plaintiff against the in-state defendant . . . ." *Ramirez*, 490 F. Supp. 3d at 1105.

## ANALYSIS

District courts have struggled to apply these rules to cases removed after a Texas Insurance Code § 542A.006 election. All courts seem to agree that an insurer's pre-filing election requires district courts to disregard a non-diverse agent joined as a defendant. *Ramirez*, 490 F. Supp. 3d at 1103; *see also Lewis v. Safeco Ins. Co. of Indiana*, No. 4:21-CV-00149-P, 2021 WL 1250324, at *3 (N.D. Tex. Apr. 5, 2021) (Pittman, J.) (considering a case when the election of liability occurred before the suit was filed and concluding that, "because at the time of removal—indeed, at the time Plaintiffs filed their original petition—there was no possibility of recovery against [the adjuster], dismissal [of the adjuster] is proper"). But if the insurer's election occurs post-filing, there are two lines of cases:

- ***Stephens* View:** In this view, sometimes called the "majority view," the "timing of an insurer's election is critical to a court's improper joinder inquiry. . . . [If the] election is made after an insured commences action, a diverse defendant-insurer cannot rely solely on the fact that the insured is now prohibited from recovering against the non-diverse adjuster." *Stephens v. Ins. Co. of Ind.*, No. 4:18-CV-595, 2019 WL 109395, at *6–7 (E.D. Tex. Jan. 4, 2019) (Mazzant, J.). Thus, "even though there is no possibility a plaintiff will recover against the non-diverse defendant in state court following an insurer's post-suit election, these courts have declined to find improper joinder and granted remand." *Bexar Diversified MF-1, LLC v. Gen. Star Indem. Co.*, No. SA-19-CV-773-XR, 2019 WL 6131455, at *3 (W.D. Tex. Nov. 18, 2019).

- ***Ramirez* View:** This view, sometimes called the "minority view," holds that, after a § 542A.006 election, a non-diverse agent is improperly joined. A "§ 542[A].006 election made after a lawsuit

> commences but before removal renders the in state adjuster
> improperly joined because the election, which requires that the
> adjuster be dismissed with prejudice, precludes any recovery against
> the adjuster." *Ramirez*, 490 F. Supp. 3d at 1103.

Complicating matters further, while the district courts were working this issue out, the Fifth Circuit issued the *Hoyt* opinion. Since then, the tables have turned and the minority view has been dominant. *See e.g.*, *Southbound, Inc. v. Firemen's Ins. Co. of Washington, D.C.*, No SA-21-CV-78-XR, 2021 WL 932045, at *3 (W.D. Tex. Mar. 10, 2021).

For the reasons below, the Court adopts the *Stephens* line of cases. In doing so, the Court accepts and enlarges the rationale the majority view rests on.

## A.   There is no removal jurisdiction because Plaintiffs did not voluntarily create diversity.

The parties do not dispute that the state-court order dismissing Smith from the case did not result from Plaintiffs' voluntary action. Def.'s Remand Resp. at ¶ 7, ECF No. 13. At the time Plaintiffs filed their original petition in Texas state court, Chubb had not elected to accept its adjuster's liability. And it can hardly be disputed that, as a general matter, an insured Texan may maintain a claim against an insurance adjuster related to its denial of insurance benefits. *See, e.g.*, *Gasch*, 491 F.3d 282–84; *Denley Group, LLC v. Safeco Ins. Co. of Indiana*, No. 3:15-CV-1183-B, 2015 WL 5836226, at *3 (N.D. Tex. Sept. 30, 2015) (Boyle, J.) ("Both the Texas Supreme Court and the Fifth Circuit have recognized that an insurance adjuster may be held individually liable for violating chapter 541 of the Insurance Code."). Thus, at the time Plaintiffs sued Smith, the case could not have been removed.

Under 28 U.S.C. § 1446(b), only the plaintiffs' voluntary acts can create federal jurisdiction. *See Weems*, 380 F.2d at 548. But that did not occur here; only through

Chubb's unilateral act did Plaintiffs' chance of recovery against Smith vanish.  Chubb's "decision is not contingent on and does not anticipate [Plaintiffs'] assent.   Section 542A.006, moreover, provides no indication that [Plaintiffs] may decline [Chubb's] election, and requires that a court dismiss [Smith] if an election is made. This entire process is done without [Plaintiffs'] agreement, contrary to [their] wishes, and is therefore involuntary." *Stephens*, 2019 WL 109395, at *4.  Therefore, absent some over-riding rule, the case must be remanded to state court.

**B.**     **Chubb failed to establish that a post-filing § 542A.006 election either qualifies as an improper joinder or that the improper-joinder rule overrides the voluntary-involuntary rule.**

Chubb argues that it has established that Smith was improperly joined and that the improper-joinder rule is an exception to the voluntary-involuntary rule.  In support, Chubb cites two Northern District cases.  Def.'s Remand Resp. at ¶ 8 (citing *Bowers v. Chubb Lloyd's Ins. Co.*,  No. 3:20-CV-1684-G, 2020 WL 5702275 (N.D. Tex. Sept. 24, 2020) (holding that a *post*-filing § 542A election satisfies an insurer's improper-joinder burden) and *Barnes Burke Self Storage, LLC v. United Fire & Cas. Co.*, No. 7:19-CV-99-M, 2019 WL 6717590 (N.D. Tex. Dec. 10, 2019) (same)).  Both opinions rely on *Hoyt v. Lane Const. Corp.*, 927 F.3d 287 (5th Cir. 2019), for the proposition that, "[w]hen a state court order creates diversity jurisdiction and that order cannot be reversed on appeal, [Fifth Circuit] precedent treats the voluntary-involuntary rule as inapplicable."  Def.'s Remand Resp. at ¶ 7 (quoting *Hoyt*, 927 F.3d at 297).  In other words, Chubb adopts and argues the *Ramirez* view.

For the reasons below, the undersigned respectfully disagrees and adopts the *Stephens* view. *First*, Chubb's authority is factually distinguishable or dicta. No binding authority controls this conflict between the two rules. In the absence of binding authority, the Court turned to the rules' underlying policies and rationales to determine whether it should extend *Hoyt*'s reasoning to this case.

*Second*, these rules' policies clarify that a *post*-filing § 542A.006 election cannot convert a properly joined defendant into an improperly joined defendant. *Stephens*, 2019 WL 109395, at *5 ("Whether a non-diverse defendant is improperly joined is a binary question; the defendant is either a proper party when joined to suit or the defendant is an improper party when joined to the suit. . . . It does not follow that a non-diverse defendant that is initially properly joined may become initially improperly joined"); *see also Duncan v. Safeco Ins. Co. of Indiana*, No. 7:20-CV-00119-M-BP, 2020 WL 6811485, at *3 (N.D. Tex. Oct. 30, 2020) (Ray, M.J.) ("[A] party that is properly joined when the case begins cannot on these facts become improperly joined thereafter."), *report and recommendation adopted*, No. 7:20-CV-00119-M-BP, 2020 WL 6799180 (N.D. Tex. Nov. 19, 2020) (Lynn, C.J.); *Barnes Burk Self Storage, LLC v. United Fire & Cas. Co.*, No. 7:19-CV-00015-O, at 7 (N.D. Tex. May 23, 2019) (O'Connor, J.) (concluding that "[i]mproper joinder is not retroactive at [d]efendant's discretion"). Since the policy does not support this extension, the Court declines to consider a post-filing § 542A.006 election as an improper joinder.

*Third*, properly understood, improper-joinder rule acts not as an exception to the voluntary-involuntary rule, but as a counterweight. The *Ramirez* view fails to properly weigh the interest protected by the voluntary-involuntary rule, leading to the voluntary-

involuntary rule's death. But the voluntary-involuntary rule must have life because the Supreme Court has approved it and the Fifth Circuit has read it into § 1446(b). Thus, even if a post-filing § 542A.006 election qualified as an improper joinder, this could not override the voluntary-involuntary rule.

*Finally*, this conclusion is buttressed by the bedrock principles of federalism and separation of powers, which caution against expanding federal jurisdiction in close cases.[3] Viewed through this lens, § 1446(b) and the Supreme Court's holdings outweigh the Fifth Circuit dicta and *Hoyt* majority's reasoning, leading this Court to decline to extent the *Hoyt* majority's distinguishable reasoning to § 542.006 elections. Accordingly, the Court concludes that, in a post-filing, § 542A.006 election, the improper-joinder rule is inapplicable.

1.   No binding authority controls § 542A.006 removals.

Chubb and the minority rule claim that Fifth Circuit precedent binds the Court to find that Plaintiffs improperly joined Smith because jurisdictional facts must be determined

---

[3]*See Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17–18 (1951) ("The jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation or by prior action or consent of the parties. To permit a federal trial court to enter a judgment in a case removed without right from a state court where the federal court could not have original jurisdiction of the suit even in the posture it had at the time of judgment, would by the act of the parties work a wrongful extension of federal jurisdiction and give district courts power the Congress has denied them."); *Cf.* Letter from Thomas Jefferson to James Madison, (Jun. 20, 1787), in THE PAPERS OF JAMES MADISON, VOL. 10, 27 MAY 1787–3 MARCH 1788, 63-67 (Robert A. Rutland, Charles F. Hobson, William M. E. Rachal, and Frederika J. Teute, eds., The University of Chicago Press, 1977) ("It will be said, that [a federal] court may encroach on the jurisdiction of the State courts. It may. But there will be a power, to wit, Congress, to watch and restrain them. But place the same authority in Congress itself, and there will be no power above them, to perform the same office. They will restrain within due bounds, a jurisdiction exercised by others, much more rigorously than if exercised by themselves.").

at the time of removal.  According to this view, an in-state defendant is improperly joined when "the [diverse] defendant has demonstrated that there is no possibility of recovery by the plaintiff against the in-state defendant . . . ."  *Ramirez*, 490 F. Supp. 3d at 1105.  This rule flows from *Hoyt* and is most faithfully and logically applied by the Honorable Judge Alvarez in *Ramirez*, 490 F. Supp. 3d 1092.  As *Ramirez* correctly notes, the Fifth Circuit has repeatedly stated that, in removal cases, district courts must "consider the claims in the state court petition as they existed *at the time of removal* . . . ."  *Id.* at 1104 (emphasis in original) (citing cases).  And after a § 542A.006 election—"irrespective of the time [the § 542A] election is made."—there is no possibility of recovery against the agent at the time of removal.  *Id.* at 1111.  It would follow that these cases are removable.

But the phrase this rule rests on—"at the time of removal"—has never been part of Fifth Circuit holdings.  None of the holdings cited in either *Ramirez* or *Hoyt* relied on the analysis's timing. In each opinion, no material facts changed between the plaintiff filing the case and the defendant's removal.  *See Hoyt*, 927 F.3d 287 (holding plaintiff's claim against non-diverse defendant was never valid); *Chavez v. State Farm Lloyds*, 746 F. App'x 337 (5th Cir. 2018) (deciding removal jurisdiction under 28 U.S.C. § 1441(a)); *Cuevas v. BAC Home Loans Servs., LP*, 648 F.3d 242 (5th Cir. 2011) (holding plaintiff's claim against non-diverse defendant was never valid); *Morgan v. Chase Home Fin.*, 306 F. App'x 49 (5th Cir. 2008) (same); *Campbell v. Stone Ins., Inc.*, 509 F.3d 665 (5th Cir. 2007) (same); *Crockett*, 436 F.3d at 533 (holding non-diverse defendant was originally misjoined to the case); *Manguno*, 276 F.3d 720 (deciding removal jurisdiction under 28 U.S.C. § 1441(a)).  This phrase is dicta.

17

These authorities' holdings contrast with this case's facts.  In this case, "[t]here is no question that this case could not be removed at the time it was filed . . . ."  Def.'s Remand Resp. at 2, ECF No. 13.  That is because, at the time of filing, Plaintiffs had claims against the non-diverse defendant, Smith.  Only *after* Plaintiffs filed the case did Chubb's § 542A election change that.  Thus, at the time Plaintiffs sued Smith, the case could not have been removed.  And therefore, the Plaintiffs' *joinder* of Smith was proper.  Only later—after Chubb's election—did any chance of recovery against Smith vanish.  *Cf. Stowell*, 2020 WL 3270709, at *4 ("*Hoyt* differs from the present case in that here the nondiverse defendant was not dismissed by the state court **prior to** removal.") (emphasis added).

This distinguishing fact is important because there are no actual binding authorities that control this situation. The minority view and *Ramirez* rely on the phrase, "at the time of removal" for its analysis.  But as shown, this is not binding.  The majority view also bases its analysis on one short phrase: "the focus of the [improper-joinder] inquiry must be on the joinder, not on the merits of the plaintiff's case."  *Smallwood*, 385 F.3d at 573.  The majority view reasons that this phrase dictates that the analysis must be made at the time of filing.  *See Stephens*, 2019 WL 109395, at *6–7.  But as *Ramirez* correctly notes, that line too, which is quoted in numerous Fifth Circuit opinions, is dicta.  The result of all this is that the factual situation caused by § 542A.006 is novel—no binding authority controls.

2.   The improper-joinder rule's rationale does not apply to post-filing § 542A.006 elections.

Without binding authority, the Court must rely on the policy and rationale supporting the improper-joinder rule.  The improper-joinder rule holds that the non-diverse defendant never should have been a party.   16 MOORE'S FED. PRAC. § 107.140[3][a] ("When, however, a case is dismissed because . . . there was a fraudulent joinder of parties, the court's finding amounts to a determination that the resident defendant was never properly before the court . . . .").  As the Fifth Circuit has said: "If no reasonable basis of recovery exists, a conclusion can be drawn that the plaintiff's decision to join the local defendant was indeed fraudulent . . . ," and therefore improper.  *McDonal*, 408 F.3d at 183. As shown above, this rationale explains the improper-joinder rule's past application.

But the rationale does not support an improper-joinder finding when the plaintiff's claims against the non-diverse defendant were initially valid.  In this situation, it is false to say an improper-joinder finding amounts to a determination that the non-diverse defendant was *never* properly before the court.  It was.  So far as this Court is aware, no Fifth Circuit case holds that the improper-joinder rule requires courts to pretend that a defendant that was initially joined properly *became* improperly joined later. This does not follow from the rule's rationale.

3.   The improper-joinder rule is not an exception to the voluntary-involuntary rule.

Chubb cites cases that state the improper-joinder rule acts as an exception to the voluntary-involuntary rule.  But this is a misnomer.  *See* Jeff Fisher, Note, *Everybody Plays the Fool, Sometimes; There's No Exception to the Rule: Procedural Misjoinder Is Not an*

*Exception to the Voluntary-Involuntary Rule*, 60 Bay. L. Rev. 993, 1013 (2008) (stating that the two rules "work perfectly in conjunction; neither is truly an 'exception' to the other"). Each case that uses the word "exception" holds that the non-diverse party was never properly before the court. If the non-diverse defendant never should have been a defendant at all, its dismissal—whether voluntary or involuntary—is irrelevant. It follows that, generally, in a conflict between the voluntary-involuntary rule and the improper-joinder rule, the improper-joinder rule wins. *See Hoyt*, 927 F.3d at 295 (citing *Alexander*, 246 U.S. at 282; and *Crockett*, 436 F.3d at 532). But that does not make it an "exception."

And this is not mere semantics. Using this "exception" as its foundation, the *Ramirez* view effectively wipes out the voluntary-involuntary rule. *See* Fisher, 60 Bay. L. Rev. at 1017 (predicting that treating the improper-joinder rule as an exception to the voluntary-involuntary rule "could herald the end of the V-I rule"). As articulated in *Ramirez*, the improper-joinder test eviscerates the voluntary-involuntary rule. The *Ramirez* view results in all of plaintiff's involuntary dismissals leading to removal. The *Hoyt* majority opinion demonstrates this danger: even a contested summary judgment fails to implicate the voluntary-involuntary rule. If that is not an involuntary dismissal, then nothing is. The same is true here. Plaintiffs alleged an undisputedly valid claim against a non-diverse defendant. *Later*, due to Chubb's § 542A unilateral election, the claims against that party became invalid. If the voluntary-involuntary rule does not apply in this situation, the Court is at a loss to think of a situation it would apply.

This is unwise because the voluntary-involuntary rule protects the plaintiff's right to "determine the removability of his case . . . ." *Alexander*, 246 U.S. at 282. In other

words, the plaintiff remains the master of the complaint.  16 MOORE'S FED. PRAC. § 107.140[3][a][C].  As shown above, the Fifth Circuit has followed the wrong rationale for the improper-joinder rule—that the state-court dismissal cannot be reversed.  The Supreme Court has never endorsed this rationale, and it has explicitly articulated the alternate rationale that a plaintiff has the right to choose its forum.  *See Jenkins*, 650 F. Supp. at 613–14.  Here, Plaintiffs want to be in state court.  Under these facts, the voluntary-involuntary rule protects their right.

Not only is this "exception" unwise, it is impermissible.  As noted above, the voluntary-involuntary rule has been incorporated into statute.  *See Weems*, 380 F.2d at 548; *Jenkins*, 650 F. Supp. at 611 (stating that "Section 1446(b) has been interpreted to preserve the voluntary-involuntary rule").  "Stare decisis applies with special force to questions of statutory construction."  GARNER ET AL., THE LAW OF JUDICIAL PRECEDENT, 333. Moreover, the Supreme Court has held that the voluntary-involuntary rule exists.  The Fifth Circuit lacks the authority to overrule it.  The voluntary-involuntary rule must have some application.

### 4. The standard of review dictates remand.

Ultimately, this is a close question of law in an area—improper-joinder jurisprudence—that is notoriously opaque.  *See Ramirez*, 490 F. Supp. 3d at 1107 (stating this law has "confusing precedent").  It is therefore paramount to view it through the proper lens.  Federal courts "must presume that a suit lies outside [its] limited jurisdiction." *Howery*, 243 F.3d at 916.  Removal statutes must be "strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand."  *Gasch*, 491 F.3d at

281–82 (cleaned up).   Additionally, the Court must "resolve any contested issues of material fact, and any ambiguity or uncertainty in the controlling state law" in Plaintiffs' favor. *Griggs*, 181 F.3d at 699.

Thus, viewing the law and facts through the appropriate lens, the Court concludes that the majority view, as articulated in the *Stephens* line of cases, is the most compelling and adds a separate basis for adopting this position. *See Stephens*, 2019 WL 109395, at *7 ("Simply put, if an insurer elects to accept full responsibility of an agent/adjuster after the insured commences action in state court, the insurer must prove that the non-diverse adjuster is improperly joined for reasons independent of the election made under Section 542A.006 of the Texas Insurance Code."). Accordingly, the Court finds that Smith was not improperly joined due to Chubb's post-filing § 542A.006 election of liability.

## CONCLUSION

For these reasons, the Court concludes that Plaintiffs' voluntary acts did not create diversity and that Chubb failed to establish that Plaintiffs improperly joined Smith. Accordingly, Plaintiffs motion to remand is **GRANTED** and the Court hereby **ORDERS** that this case is **REMANDED** to the **96th District Court of Tarrant County, Texas**. The Clerk of this Court is **INSTRUCTED** to mail a certified copy of this Order to the District Court of Tarrant County, Texas.

**SO ORDERED** on this **25th day** of **May, 2021.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE

22